UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

UNITED STATES OF AMERICA

v.                                                        Case No. 3:25-CR-57-CCB-SJF

ADAM BRAY

## OPINION AND ORDER

Defendant Adam Bray, now proceeding *pro se*, has moved to dismiss the superseding indictment against him, which included two counts for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1)—one on March 3, 2025, and another on June 16, 2025, and June 18, 2025. (ECF 96). The Government timely filed a response to the motion. (ECF 102). Mr. Bray has not filed a reply brief, making the motion ripe for ruling.

Through his motion to dismiss, Mr. Bray explicitly contends that 18 U.S.C. § 922(g)(1) violates the Second, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution. (ECF 96 at 1). In support, Mr. Bray quotes language from the designated amendments then offers brief commentary on each of those amendments. In his commentary, Mr. Bray asserts that the Constitution does not state that a felon loses civil protected rights; that double jeopardy attaches when a person's criminal history enhances or creates a new criminal charge for that person; and that it is cruel and unusual punishment for him not to have the same privileges and immunities as other citizens. He then quotes Article 1, Section 32 of the Indiana Constitution, which states:

"The people shall have a right to bear arms, for the defense of themselves and the State." He then cites caselaw to show the Government's burden to prove all elements of an offense beyond a reasonable doubt; the legal definition of possession versus constructive possession; and examples where charges under 18 U.S.C. § 922(g)(1) were dismissed or where Section 922(g)(1) was found unconstitutional through facial or as-applied challenges. Mr. Bray does not, however, link any of the specifics of those cases to the facts of his case. He then concludes stating that his motion to dismiss should be granted "[d]ue to the indictment having two different dates 'the 16th and 18th of June, 2025', evidence that doesn't match up with the indictment 'firearm' and violation of the 2nd–5th–8th and 14th Amendment[s] of the U.S. Federal Constitution." (*Id*. at 5).

From Mr. Bray's motion, the Government infers an argument that 18 U.S.C. § 922(g)(1) is unconstitutional, at least as applied to him, such that the superseding indictment should be dismissed. The Government then develops counter-arguments based on recent constitutional precedent and asks the Court to find 18 U.S.C. § 922(g)(1) constitutional, especially as applied to Mr. Bray. Similarly, the Court infers a constitutional challenge to 18 U.S.C. § 922(g)(1) in Mr. Bray's motion. From Mr. Bray's stated concerns about two dates in a single count of the indictment, and presumably the use of different firearms on those dates, the Court construes a second argument that Count 2 of the superseding indictment is an improper duplicitous charge that should be dismissed. The Government did not address the duplicitous indictment argument inferred by the Court.

2

FACTUAL BACKGROUND

In July 2025, Mr. Bray was indicted in a single count for violating 18 U.S.C. § 922(g)(1) "on or about and between June 16, 2025, and June 18, 2025," by knowingly possessing a firearm, in and affecting commerce, as an individual who had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. (ECF 5). The Government reports that on June 16, 2025, Mr. Bray is alleged to have been at a house on Tremont Street in Michigan City, Indiana where the mother of K.F.'s child lived. As K.F. prepared to leave the Tremont Street house, Mr. Bray allegedly started yelling at K.F. to leave or that he was "going to shoot him." Mr. Bray is alleged to have had an all-black handgun, owned by C.S. in his hand. The Government also reports that on June 18, 2025, police were dispatched to the Tremont Street house as the result of an open 911 call from C.S. Police allegedly entered the Tremont Street front door after knocking, getting no answer, and forcibly pushing through the door, which was barricaded by a refrigerator and table. Police are alleged to have observed Mr. Bray restraining C.S. in the house and a firearm falling near Mr. Bray's feet. Police located spent shell casings, bullet holes in walls, and other firearms in the house.

In January 2026, Mr. Bray was indicted in a superseding indictment on an additional count of violating 18 U.S.C. § 922(g)(1), this time on or about March 3, 2025. (ECF 83). The Government reports that on March 3, 2025, Mr. Bray was driving a car parked in an alley with a license plate that said, "not for hire, Traveler." Allegedly, police observed furtive movements by Mr. Bray as they approached the vehicle and detected the odor of marijuana coming from the car. While searching the car, police

located a stolen Glock G43, 9mm handgun that DNA analysis later showed strong support to include Mr. Bray as having contact with the gun.

According to the Pretrial Services Report filed with the Court for the defendant's detention hearing, and confirmed upon review of the publicly available state court dockets[1], Mr. Bray has been convicted of two felonies and multiple misdemeanors in Indiana. (ECF 15). Relevant here are Mr. Bray's felony convictions.[2] In 2011, Mr. Bray was convicted for the felony of Dealing Cocaine under Ind. Code § 35-48-4-1(b)(1). (*Id.* at 5). In 2021, he was convicted for the felony of Unlawful Possession of a Firearm by a Serious Violent Felon under Ind. Code § 35-47-4-5(c). (*Id.* at 5–6).

**ANALYSIS**

Constitutional Challenges to 18 U.S.C. § 922(g)(1)

The Court construes Mr. Bray's motion to dismiss as challenging 18 U.S.C. § 922(g)(1) both facially and as applied to him. A facial challenge is "the most difficult challenge to mount successfully," because it alleges that a statute is unconstitutional in all of its applications. *United States v. Salerno*, 481 U.S. 739, 745 (1987). If Mr. Bray cannot show that the statute is unconstitutional at least as applied to him, then it cannot be facially unconstitutional. *See United States v. Rahimi*, 602 U.S. 680, 693 (2024); *Salerno*, 481

---

[1] The Court finds that it is appropriate to take judicial notice of the relevant state court dockets in this case under Federal Rule of Evidence 201. "A court may consider judicially noticed documents without converting the motion to dismiss into a motion for summary judgment." *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).

[2] Mr. Bray's record also includes convictions for several misdemeanors, including Harboring a Non-Immunized Dog, Resisting Law Enforcement, Disorderly Conduct, and Criminal Recklessness. (ECF 15). But these crimes do not fall under the scope of 18 U.S.C. § 922(g)(1), which requires a crime to be punishable by more than one year. Several other felony charges were dismissed with prejudice.

U.S. at 745; *Hegwood v. City of Eau Claire*, 676 F.3d 600, 603 (7th Cir. 2012); *United States v. Regalado*, 709 F. Supp. 3d 619 (N.D. Ind. 2023). Thus, it makes sense to begin by evaluating if the statute is constitutional as applied to Mr. Bray himself. If it is, then the facial challenge necessarily fails.

*New York State Pistol and Rifle Association v. Bruen*, 597 U.S. 1 (2022), clarified that courts should use a "history and tradition" approach in understanding the scope of the Second Amendment, evaluating a law's constitutionality by looking to the principles underlying analogous historical regulations of the right. *Id.* at 1, 2, 22, 24. Two years later, the Court provided additional guidance for the *Bruen* analysis, noting that when evaluating the historical record, courts need not find a "dead ringer" or "historical twin" but only that the statute be "analogous enough to pass constitutional muster" by "comport[ing] with the principles underlying the Second Amendment." *Rahimi*, 602 U.S. at 692.

Courts have treated Section 922(g)(1) using two different approaches when performing a *Bruen* analysis of the history. Some courts have held that Section 922(g)(1) is constitutional as applied to all felony convictions, thereby categorically rejecting as-applied challenges. *See, e.g.*, *United States v. Jackson*, 110 F.4th 1120, 1125 (8th Cir. 2024) ("we conclude that there is no need for felony-by-felony litigation regarding the constitutionality of § 922(g)(1)"); *Vincent v. Bondi*, 127 F.4th 1263, 1266 (10th Cir. 2025) (we [uphold] the constitutionality of § 922(g)(1) without drawing constitutional distinctions based on the type of felony involved."); *Regalado*, 709 F. Supp. 3d at 631 (noting that "at times, convicted felons have argued for partitioning [§ 922(g)(1)]" to

5

only apply to violent felons, but suggesting that this approach might render the statute unconstitutionally vague).

Other courts have found that a proper reading of the history does not support a categorical rule but a more fine-tuned analysis into whether the specific predicate felony involved in a Section 922(g)(1) prosecution could indicate dangerousness, the historical grounding principle for most firearms regulation. *See United States v. Williams, 113 F.4th 637, 663 (6th Cir. 2024)* (holding that "§ 922(g)(1) is constitutional on its face and as applied to dangerous people" and "district courts should make fact-specific dangerousness determinations after taking account of the unique circumstances of the individual, including details of his specific conviction."); *Range v. Att'y Gen., 124 F.4th 218, 230 (3d Cir. 2024)* (stating that "we refuse to defer blindly to § 922(g)(1) in its present form" and rejecting the Government's attempt to "stretch dangerousness to cover all felonies"); *Kanter v. Barr, 919 F.3d 437, 461 (7th Cir. 2019)* (Barrett, J., dissenting) ("history confirms that the basis for the permanent and pervasive loss of all rights cannot be tied generally to one's status as a convicted felon or to the uniform severity of punishment that befell that class"); *see also* William Baude & Robert Leider, *The General-Law Right to Bear Arms*, 99 Notre Dame L. Rev. 1467, 1511 (2024) ("[S]omething like the dangerousness principle would give the Court a tractable way to adjudicate the lawful scope of [Section 922(g)(1)]. If the dangerousness principle is the lodestar, a complete lifetime ban on possession of a firearm by any felon is plainly too broad."). So far, neither the Supreme Court nor the Seventh Circuit has addressed which of these approaches is correct. *See United States v. Gay*, 98 F.4th 843, 846 (7th Cir.

2024) ( "[t]he Justices have yet to consider the question whether non-violent offenders may wage as-applied challenges to § 922(g)(1)").

But here, Mr. Bray's previous convictions for Dealing in Cocaine and Unlawful Possession of a Firearm by a Serious Violent Felon show that he is an individual dangerous to public safety, which means that his firearm rights can be constitutionally restricted regardless of the approach. Courts that have described the contours of this "dangerousness" principle have indicated that it does not merely include crimes involving direct aggression towards others, but crimes that indicate recklessness and lack of care for others' safety. *See United States v. Brazier*, Case No. 3:22-CR-87 JD, 2025 WL 1411081, at *10 (N.D. Ind. May 14, 2025) ("The relevant question then is whether the prior felony is the kind that ordinarily indicates that the person cannot be trusted to use a gun responsibly, not whether everyone who commits the crime is necessarily dangerous or violent."). Even courts that explicitly allow as-applied challenges to Section 922(g)(1) agree with this public safety principle, describing how crimes that are "not strictly crimes against the person" but "nonetheless pose a significant threat of danger" may be considered dangerous under a granular analysis of Section 922(g)(1)'s constitutionality. *Williams*, 113 F.4th at 659; *see also United States v. Walters*, 151 F.4th 122, 133–35 (3d Cir. 2025); *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023) ("Governments may keep firearms out of the hands of dangerous people who are apt to misuse them" (citing *Bruen*, 597 U.S. at 26–27)); *Regalado*, 709 F. Supp. 3d at 632 ("The government has convincingly shown a historical tradition of disarming individuals perceived as dangerous to the polity.").

Mr. Bray's two felony convictions are for crimes indicative of dangerousness. The Seventh Circuit has long recognized that "the illegal drug industry is, to put it mildly, a dangerous, violent business," *United States v. Diaz*, 864 F.2d 544, 549 (7th Cir. 1988), and that "weapons are tools of the narcotics trade," *United States v. Ramirez*, 45 F.3d 1096, 1103 (7th Cir. 1995). The Supreme Court has likewise cautioned that "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993); *see also United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011) ("offenses relating to drug trafficking . . . are closely related to violent crime."). Drug traffickers are apt to use firearms "to protect drug stockpiles, to preempt encroachment into a dealer's 'territory' by rival dealers, and for retaliation." *United States v. Luciano*, 329 F.3d 1, 6 (1st Cir. 2003). And even when "drug dealing [is] not necessarily violent," it is "dangerous because [it] often lead[s] to violence." *Folajtar v. Att'y Gen.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting). Accordingly, "because their past crimes [a]re inherently dangerous," "[d]isarming . . . drug dealers makes sense." *Id.* Thus, the disarmament of drug-traffickers accords with the "legislature[']s . . . power to prohibit dangerous people from possessing guns." *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting).

Mr. Bray's felony crimes of conviction, Dealing Cocaine and Unlawful Possession of a Firearm by a Serious Violent Felon, involve illegal drug trafficking and the use of firearms, both of which reflect the dangerous and violent nature of the crimes. Therefore, Mr. Bray's prior convictions show that disarming him is constitutional given the danger his conduct has posed to the community. As a result, Section 922(g)(1) is constitutional as applied to him. His facial challenge to Section 922(g)(1) necessarily

fails as well. Accordingly, Mr. Bray's motion to dismiss must be denied as to the constitutionality of 18 U.S.C. § 922(g)(1).

Duplicitous Indictment

In the Conclusion section of his motion to dismiss, Mr. Bray states, without explanation, that his motion to dismiss should be granted, in part, because the indictment cites two dates—June 16 and June 18, 2025—and "evidence doesn't match up with the indictment 'firearm'." (ECF 96 at 5). Without more, the Court can only assume Mr. Bray is challenging Count 2 of the superseding indictment as duplicitous because it charges separate instances of possession of a firearm on two different days using different firearms.

A duplicitous count joins two or more offenses into a single count. *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001). Yet an indictment may charge a defendant with two or more offenses in a single count "if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "In determining whether joinder was proper, [the court looks] solely to the face of the indictment, comparing the offenses charged for categorical, not evidentiary, similarities." *United States v. Coley*, 137 F.4th 874, 883 (7th Cir. 2025) (internal quotations omitted).

And "felony firearm possession [under 18 U.S.C. § 922(g)] is a continuing offense that ceases only when possession ends." *United States v. Dukes*, 147 F.4th 711, 717 (7th Cir. 2025). Therefore, the Double Jeopardy Clause of the Fifth Amendment prohibits punishing any defendant more than once for "continuous possession of the same gun,

9

even under a theory that he is being charged for different 'moments' of possession."

*United States v. Ellis*, 622 F.3d 784, 793 (7th Cir. 2010). Said another way, the Government

cannot charge Mr. Bray more than once for possession of the same firearm on different

days unless his possession of the firearm—whether actual possession or constructive

possession—ended in between the two dates. *Cf. Buchmeier*, 255 F.3d at 422. Moreover,

"when a defendant's possession of multiple firearms is simultaneous and

undifferentiated, the government may only charge that defendant with one violation of

§ 922(g)(1) . . . regardless of the actual quantity of firearms involved." *Id.* Mr. Bray's

limited statements about the allegations of unlawful possession of a firearm on two

dates with firearms that do not "match up" fail to show how Count 2 of the superseding

indictment is improperly duplicitous. Accordingly, Mr. Bray's motion to dismiss must

also be denied as to any argument of duplicitous indictment.

CONCLUSION

For the reasons discussed above, Mr. Bray's Motion to Dismiss is **DENIED**. (ECF

96).

Lastly, Mr. Bray has consistently used references bearing the hallmarks of

"sovereign citizen" posturing in his filings. In its order dated March 25, 2026, the Court

acknowledged the sovereign citizen references in his motions to suppress (ECF 94 &

97), including his "Notice To All Government Agent's And Entity's" (ECF 94-1), and

advised that sovereign citizen theories and references would not be entertained in this

Court. (ECF 105 at 2 n.1). Mr. Bray's instant motion to dismiss, filed around the same

time as the motions to suppress, included similar sovereign citizen references including

10

"Sui Juris Adam Bray," "the living flesh and blood man . . . not the entity known as "ADAM ROSS BRAY," and "The Living Man/Sui Judge." (ECF 96 at 1, 5, and 6).

Then on March 26, 2026, Mr. Bray filed a "Notice For Violation Of Rule 53.1 Failure To Rule on Motion" using sovereign citizen references to himself and citing Rule 53.1, which is not part of the Federal Rules of Civil Procedure and the Local Rules of the Northern District of Indiana that are applicable to this case. (ECF 106). With this order, Mr. Bray's apparent concerns about the status of his motions to suppress, his motion to dismiss, and his "Notice To All Government Agent's And Entity's" are resolved. Mr. Bray is **ADVISED** again, however, that this Court rejects all sovereign citizen theories summarily and will not entertain them. *See United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011).

SO ORDERED on March 30, 2026.

_/s/ Cristal C. Brisco_

CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT